UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VANESSA MARTI, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SCHREIBER/COHEN, LLC and DAVID ROWAND HOWARD, <br><br> Defendants. | C.A. No. 4:18−CV−40164−DHH |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now comes Vanessa Marti, on behalf of herself and all others similarly situated, plaintiff in the above-entitled action, by and through undersigned counsels, who, pursuant to Fed. R. Civ. P. 56, respectfully requests that this Court deny Defendants' Motion for Summary Judgment (ECF No. 58). In support, Ms. Marti states the following.

### I.      STATEMENT OF UNDISPUTED MATERIAL FACTS

On October 3, 2017, Schreiber/Cohen LLC n/k/a Schreiber Law LLC ("Schreiber") mailed a letter ("the Letter") (ECF No. 25-1) to Plaintiff Vanessa Marti ("Ms. Marti"). (Defendants' SOF at ¶ 1). The Letter was mailed to Ms. Marti in an effort to collect an unpaid debt. (Defendants' SOF at ¶ 1, Ex. A, ¶ 2) Schreiber regularly uses the mail and telephone in a business the principal purpose of which is the collection of debts. (Affidavit of Counsel ("AOC") at ¶ 4, Ex. 1, p. 1-2). Schreiber regularly collects or attempts to collect debts due to other parties. (AOC at Ex. 1, p. 2).

With regard to its purported identification of the current creditor, the parties agree that the Letter indicates the name of Midland Funding LLC in its heading, that "[t]his law firm represents Midland Funding, LLC," that it is from Schreiber, that it is an attempt to collect a debt, and that Midland Funding, LLC is Schreiber's client. (AOC at Ex. 2, p. 2).

The Letter was based on a template. (AOC at Ex. 1, p. 4) David Howard, an employee of Schreiber, drafted the template. (Defendants' SOF at ¶ 3, Ex. B, p. 21:24-22:6). It was the routine practice of Schreiber to prepare and send initial communications to collect alleged debts in the form of the Letter to residents of Massachusetts. (AOC at Ex. 1, p. 6). The Letter was the initial communication from Schreiber to Ms. Marti. (AOC at Ex. 1, p. 5). The debt was for charges incurred by Ms. Marti for personal rather than business purposes. (Defendants' SOF at Ex. C, p. 66:24-67:3). A total of 2,680 Massachusetts residents received an initial communication from Schreiber in the form of the Letter for debts originally due Comenity Bank. (AOC at Ex. 3, p. 3).

Schreiber is engaged in trade and commerce in Massachusetts, and does not keep assets or maintain a place of business within Massachusetts. (AOC at Ex. 4, p. 1-2).

## II.     STATEMENT OF DISPUTED MATERIAL FACTS

Defendants wrongfully allege that Ms. Marti has "conceded" she did not sustain an injury for which she is seeking actual damages, and that she has presented "no evidence" of injury or actual damages. (Defendants' SOF at ¶¶ 5-6) This is patently false. Ms. Marti alleges that she suffered damages from Defendants' violation of law in the form of confusion (ECF No. 25, ¶ 28). At her deposition she testified to the following:

Q. Do you know how you allege that my clients violated these laws?

A. I know in the letter that was sent to me there was three different parties that were stated in the letter, and it was not clarified as to who, which party, I owed the money to.

Q. Okay. When you say – when you say "three different parties" – well, strike that.

Can you turn to the – in Exhibit 2, can you turn to the letter?

MR. SCHNEIDERMAN: Can you just go back – can you read this part back?

(Answer read by the court reporter.)

Q. Can you point out in the letter which three different parties it states that you owed the money to?

MR. YARBROUGH: Objection. Form. She didn't say that.

A. So it's stating three different parties. I see it's stating Schreiber, who sent the letter; then it's saying "Our Client, Midland Funding"; and then I have the original creditor, Comenity Bank.

Q. Okay. And you were confused as to which of those three parties you owed money to?

A. Yeah, who – who am I supposed to be paying this, the debt, to?

Q. You were confused. You didn't know whether it was Schreiber/Cohen, Midland Funding, or Comenity Bank as to who you were to pay money to?

A. Correct.

(Defendants' SOF at Ex. C, p. 26:6-27:11). As explained below, such damages are fully

cognizable and warrant the requested relief.


III.    STANDARD OF LAW

Summary judgment should be granted if the movant shows "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56. If the opposing party's evidence is "merely colorable, or is not significantly

probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249-50 (1986) (citations omitted). The movant need only show "an absence of evidence to

support the nonmoving party's case" to warrant the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

To defeat a motion for summary judgment, the nonmoving party must come forward with sufficient evidence to show that there is a "genuine issue for trial." *LeBlanc v Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993) (quoting *Anderson*, 477 U.S. at 256). The nonmovant cannot rely on unsupported assertions, speculation, or conjecture, and "must adduce specific, provable facts demonstrating that there is a triable issue." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990) (quoting *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989). In addition, a mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.


## IV.    APPLICATION

"A viable claim for violation of the FDCPA requires that a plaintiff establish three elements: `(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA.`" *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014)  (Citation omitted).

Additionally, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful in Massachusetts pursuant to G.L. c. 93A, § 2. A violation occurs if a defendant: (1) is engaged in trade or commerce in Massachusetts and (2) engages in any unfair or deceptive act that causes damage or injury to another.

Defendants have not raised any argument with regard to the majority of these elements.[1] Rather, Defendants' arguments may be reduced to two points: (1) whether there was a substantive violation of law and (2) whether Plaintiff has standing to bring her claims.

## A.      The Letter Violated the FDCPA and G.L. 93A

Ms. Marti contends that the Letter violates three separate provisions of the Fair Debt Collection Practices Act in addition to the Massachusetts Consumer Protection Act. As explained below, these contentions are well-founded in both fact and law such that Defendants' Motion for Summary Judgment should be denied.

First, the Letter fails to meet even the "rather low" standard imposed on creditors under 15 U.S.C. § 1692g(a). *In re Martinez*, 271 B.R. 696, 701 (S.D. Fla. 2001). Specifically, pursuant to § 1692g(a), the Letter was required to contain, among other things, "the name of the creditor to whom the debt is owed." Of course, "a debt collector cannot satisfy Section 1692g(a)(2) by naming an entity without explicitly or implicitly making clear in the letter that the entity is the debtor's current creditor to whom a debt is owed." *Datiz v. Int'l Recovery Associates, Inc*., 15-CV-3549 (ADS) (AKT), 2016 WL 4148330 at *11 (E.D.N.Y. Aug. 4, 2016)

In order to satisfy § 1692g, this information must be "conveyed effectively" to a consumer and it must not be "overshadowed or contradicted" by other language contained therein. *Swanson* v. *S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988). *See also Eun Joo Lee* v. *Forster & Garbus LLP*, 926 F. Supp. 2d 482, 487 (E.D.N.Y. 2013);

---

[1] Although Defendants' Motion for Summary Judgment does not dispute Ms. Marti's allegation that they are each a "debt collector" as that term is defined under the FDCPA, Ms. Marti has not yet deposed Mr. Howard for the purpose of obtaining information on this topic, among other things. This discovery dispute is currently under advisement with the Court (ECF No. 55). Accordingly, Ms. Marti contends that summary judgment is inappropriate at this stage as discovery has not yet been completed and these facts are currently unavailable to her. Fed. R. Civ. P. 56(d).

*McGinty vs. Prof'l Claims Bur., Inc.*, 15-CV-4356 (SFJ) (ARL), 2018 WL 5622494 (E.D.N.Y. Jan. 2, 2018).

The operative consumer viewpoint from which FDCPA cases such as this should be judged has traditionally been referred to as a "least sophisticated consumer" standard. While courts that adopt this standard generally include an element of reasonableness, this Circuit has adopted a "hypothetical unsophisticated consumer" standard due to grammar concerns. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 n.4 (1st Cir. 2014). Otherwise, if taken literally, the "least sophisticated consumer" would be "the very last rung on the sophistication ladder" and would potentially include consumers who lack any reading comprehension skills. *Gammon v. GC Services*, 27 F.3d 1254, 1257 (7th Cir. 1994). The different terminology, though, is merely a matter of semantics and there is little difference between the two standards. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 n.4 (1st Cir. 2014). While this is a low bar, it is an objective standard that preserves an element of reasonableness and a debt collector will therefore not be held liable based on an individual consumer's "chimerical or farfetched reading of a collection letter." *Id*. at 104. Accordingly, "the standard protects 'all consumers, including the inexperienced, the untrained and the credulous.'" *LaTour v. Lustig, Glaser & Wilson, PC.*, No. CV 16-40072-TSH, 2017 WL 1190370, at *2 (D. Mass. Mar. 29, 2017) (Quoting *Pollard*, 766 F.3d at 103-104).

Moreover, it is noteworthy that the Letter was mailed to Ms. Marti and the class members by an attorney. The First Circuit has explicitly held that attorney debt collectors warrant closer scrutiny under the FDCPA, as "[a]n unsophisticated consumer, getting a letter from an attorney, knows the price of poker has just gone up." *Pollard*, 766 F.3d at 106. (Citation omitted). The Third Circuit has further elaborated on the policy basis supporting closer scrutiny of attorney

debt collectors, stating that "attorney debt collectors warrant closer scrutiny because their abusive collection practices "are more egregious than those of lay collectors. . . The state has given lawyers certain privileges—such as the ability to file a lawsuit—not applicable to lay debt collectors." *Campuzano-Burgos* v. *Midland Credit Mgt., Inc.*, 550 F.3d 294, 301 (3d Cir. 2008) (Citations omitted).

Here, despite Defendants' arguments to the contrary, the Letter plainly fails to explicitly identify the current creditor. (Defendants' SOF at Ex. A, Ex. 1). No entity is identified as a "current creditor" and that phrase itself is conspicuously absent from the Letter. (*Id*.) The Letter merely identifies Midland as Schreiber's "Client" whom it "represents." (*Id*.) No further information about either Midland or its role with regard to the debt is provided. (*Id*.) There is also no language explaining the relationship between Midland and the ownership of the debt. (*Id*.) Accordingly, the question is whether the mere identification of Midland as Schreiber's "Client" whom it "represents" implicitly identifies the current creditor in compliance with the hypothetical unsophisticated consumer standard. It does not.

Defendants' argument emphasizes that some courts have found letters using the word "client" to comply with the FDCPA. While that is correct, none of the cases cited by Defendants held that the word "client" – without more – is sufficient to comply with the FDCPA.

In *Wright v. Phillips & Cohen Associates, Ltd*., 12-CV-4281 (DRH) (GRB), 2014 WL 4471396 (E.D.N.Y Sept. 10, 2014), the court held that the letter at issue complied with the FDCPA not because of the word "client" but rather based on other language in the body of the letter, which stated:

> Your account has been referred to our office for collection on behalf of our above referenced client. To resolve this matter and prevent any further collection activity, full payment should be sent to this office at the address above. IT IS NOT IN YOUR

BEST INTEREST TO NEGLECT THIS ACCOUNT! YOU MAY CONTACT
OUR OFFICE AT THE ABOVE TELEPHONE NUMBER.

*Id*. at *1 (Emphasis in original). In fact, the court in *Wright* specifically held that any confusion

caused by use of the word "client" "was alleviated by Defendant's plain statement that the debt

Defendant intended to collect was "on behalf of our above referenced client," i.e., PAG." 2014

WL 4471396 at *5. Similarly, in *Romano v. Schachter Portnoy, L.L.C.*, 17-CV-1014 (ARR)

(CLP), 2017 WL 2804930 (E.D.N.Y. June 28, 2017), the court relied on language in the body of

the letter at issue, which stated "[t]his firm has been retained by the above-named client *to

collect the amount due*, indicated above." (Emphasis added). *Id*. at 2.

In *Bryan v. Credit Control, LLC*, 18-CV-0865 (SJF) (SIL), 2018 WL 6520730, (E.D.N.Y.

Dec. 11, 2018), the debt at issue was a Kohl's credit card that has been originally issued by

Chase Bank USA N.A. and subsequently transferred to Capital One Bank. The letter at issue

listed Kohl's as the debt collector's "Client," identified Chase Bank USA N.A. as the original

credit grantor, included a client account number, and further stated that the debt collector was

writing to "resolve [Bryan's] account and . . . offer [him] . . . options . . . to pay off [the]

account." *Id*. at *1 (Edits in original). In determining that this letter complied with the FDCPA,

the court stated, "Any confusion potentially caused by the inclusion of Chase Bank USA N.A. as

the "Original Credit Grantor" is negated by the inclusion of the client account number and

content addressing payment of that account." Id. at *5. The Court further stated:

> Bryan applied for the credit card directly from Kohl's, transacted business
> exclusively with Kohl's, and was obligated to make payments through Kohl's. No
> debtor, however unsophisticated, would be uncertain as to the meaning of the
> message, as it is obvious that the Collection Letter referred to Plaintiff's Kohl's
> credit card account.

Id. at *5.

Similarly, in *Fichtel v. Merchants' Credit Guide Co.*, 4:18-CV-00011, 2018 WL 3453910 (E.D. Tex. June 25, 2018), the letter at issue was sent by a debt collector attempting to collect a medical debt owed to an original creditor. In holding that this letter complied with the FDCPA, the court relied on language in the body of the letter stating, among other things, that "their 'client' has applied insurance proceeds to the debt owed." *Id*. at *4. Moreover, the court noted that this was a debt owed to an original creditor who was not "vaguely named" and that the Plaintiff had "offered no factual allegations that there are multiple entities" from which confusion could result. *Id*.

Here, though, the Letter from Defendants to Ms. Marti plainly fails to provide any information from which a hypothetical unsophisticated consumer could make a logical deduction as to the identity of the creditor as opposed to impermissible guesswork. *Steffek vs. Client Servs., Inc.*, 948 F.3d 761, 767 (7th Cir. Jan. 21, 2020). Ms. Marti contends she was confused by the Letter because she did not know who she owed the money to. At her deposition she testified to the following:

Q. Do you know how you allege that my clients violated these laws?

A. I know in the letter that was sent to me there was three different parties that were stated in the letter, and it was not clarified as to who, which party, I owed the money to.

Q. Okay. When you say – when you say "three different parties" – well, strike that.

Can you turn to the – in Exhibit 2, can you turn to the letter?

MR. SCHNEIDERMAN: Can you just go back – can you read this part back?

(Answer read by the court reporter.)

Q. Can you point out in the letter which three different parties it states that you owed the money to?

MR. YARBROUGH: Objection. Form. She didn't say that.

A. So it's stating three different parties. I see it's stating Schreiber, who sent the letter; then it's saying "Our Client, Midland Funding"; and then I have the original creditor, Comenity Bank.

Q. Okay. And you were confused as to which of those three parties you owed money to?

A. Yeah, who – who am I supposed to be paying this, the debt, to?

Q. You were confused. You didn't know whether it was Schreiber/Cohen, Midland Funding, or Comenity Bank as to who you were to pay money to?

A. Correct.

(Depo of Marti. at 26:6-27:11).

While a hypothetical unsophisticated consumer is "capable of making basic local deductions and inferences," they are also "not obliged to closely parse the words of a communication in order to divine its meaning." *Pettway v. Harmon Law Offices, P.C.*, 03-CV-10932 (RGS), 2005 WL 2365331 at *3 (D. Mass. Sept. 27, 2005) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir.2000)); *Weiner v. Rushmore Loan Mgt. Servs., LLC*, 4:17-40144 (TSH), 2019 WL 6619209 at *3 (D. Mass. Dec. 5, 2019) (quoting *Waters v. Kream*, 770 F. Supp. 2d 434, 437 (D. Mass. 2011). Defendants have failed to cite any language in the Letter from which a hypothetical unsophisticated consumer could make a deduction or inference that Midland is the current creditor, other than by engaging in impermissible guesswork.

The Seventh Circuit case of *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016) is particularly instructive on this point. There, the Court considered a letter that had sought to identify Asset Acceptance, LLC as the current creditor. It specifically contained language stating "Re: Asset Acceptance, LLC Assignee of AMERISTAR." In concluding that the letter violated the FDCPA, the Seventh Circuit stated:

Nowhere did the letter say that Asset Acceptance currently owned the debts in question. Asset Acceptance was identified as the "assignee" of another company, not as the current creditor or owner of the debt. The letter went on to say that the referenced account "has been transferred from Asset Acceptance, LLC, to Fulton, Friedman & Gullace, LLP." These statements simply did not say who currently owned the debts. Instead, each recipient was left to guess who owned the debt following the "transfer" of the "account." On its face, then, the letter failed to disclose the information that § 1692g(a)(2) required. The district judge correctly recognized this ambiguity, noting that the word "transfer" could mean either conveyance of title or assignment for collection, and that the letter did not "suggest any particular form or method of conveyance." *Janetos v. Fulton Friedman & Gullace, LLP,* No. 12 C 1473, 2015 WL 1744118, at *4 (N.D.Ill. Apr. 13, 2015).

Defendants argue that the letter nevertheless complied with § 1692g(a)(2) because, when read in its entirety, it implicitly disclosed the legal relationship between Asset Acceptance and Fulton, which in turn made clear that Asset Acceptance continued as the owner of the debt. We disagree. We address each portion of the context that defendants argue satisfied their § 1692g(a)(2) obligation. First, defendants argue that the letter made clear that Fulton is a law firm and a debt collector. True enough, but neither point leads to a "basic logical deduction" that Fulton must have been collecting the referenced debts on Asset Acceptance's behalf or that Asset Acceptance remained the current owner of the debts. See *Pettit,* 211 F.3d at 1060 (unsophisticated consumer is "capable of making basic logical deductions and inferences").

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321–22 (7th Cir. 2016).

The Seventh Circuit was again confronted with a similar issue recently in *Smith* v. *Simm Associates, Inc.*, 926 F.3d 377, 380 (7th Cir. 2019). In *Smith*, the consumer plaintiffs had PayPal accounts issued through Comenity Capital Bank, on which Comenity was both the original and current creditor. The letter at issue in the case, though, identified Comenity as the "Original Creditor" and PayPal Credit as "Client." The Court noted that while this language identified Comenity as the "original" rather than the "current" creditor, the letter did not violate the FCPDA because it provided clarity for an unsophisticated consumer by including "the commercial name to which the debtors had been exposed, allowing the debtors to easily recognize the nature of the debt." *Id*. at 381. The Court further stated, "The lesson from *Janetos* is that even accurate technical terminology—"transfer" or "assignee"—can be

confusing to an unsophisticated consumer and can violate § 1692g(a)(2), which requires a debt collector to present information about the creditor and the debt in the manner the unsophisticated consumer can understand." *Id.*

Here, as previously stated, the Letter merely identifies Midland as Schreiber's "Client" whom it "represents." No further information about either Midland or its role with regard to the debt is provided. The closest case on point to this fact pattern is *Gross v. Lyons Doughty & Veldhuis, P.C.*, which was recently decided by the Third Circuit Court of Appeals. *Gross* v. *Lyons Doughty & Veldhuis, P.C.*, 779 F. App'x 864, 866 (3d Cir. 2019). In *Gross*, the Court considered a putative class action claim regarding a letter from a defendant law firm in which a consumer contended that the initial communication failed to identify the creditor in violation of § 1692g(a)(2). As stated by the Court:

> LDV sent a letter to Gross seeking to collect on a credit card debt. The letter's subject line provided:
>
> Capital One Bank (USA), N.A., assignee of
> HSBC BANK NEVADA N.A. RCS DIRECT MARKETING/ORCHARD BANK
> GLENN D GROSS
> ACCOUNT NO.: XXXXXXXXXXXX 6461
>
> The letter stated that LDV "represents Capital One Bank (USA), N.A., assignee of HSBC BANK NEVADA N.A. RCS DIRECT MARKETING/ORCHARD BANK in connection with [Gross's] account" and that LDV was a debt collector. The letter added that Gross's account was in default and that he could contact LDV's office to pay the outstanding balance.

*Gross*, 779 F. App'x at 865. The Third Circuit held that "LVD's letter fails to apprise the least sophisticated debtor of the creditor's identity for three related reasons." *Id.* at 866.

> First, LDV's letter did not explicitly state that Capital One Bank was Gross's creditor or that it owned his debt.
>
> Second, identifying Capital One Bank as the "assignee of" three other entities does not disclose the identity of the creditor. . . .

Indeed, even to a sophisticated consumer, LDV's letter is susceptible to different interpretations. On one hand, the assignment language could convey that Capital One Bank was more akin to an agent who had the right to hire an attorney and collect the debt, and the other entities would benefit from that activity without acting on their own. Under this reading, even a sophisticated debtor could conclude that these entities have an ownership interest in the debt, and Capital One Bank was acting for them. An equally plausible reading is that Capital One Bank now owned the debt previously owned by one or more of the other three entities.

Third, while the least sophisticated debtor must read collection notices in their entirety, LDV's letter as a whole does not effectively disclose the creditor's identity. The letter states that LDV "represents" Capital One Bank and that LDV is a debt collector. This conveys the identity of LDV's client and that LDV has been retained to collect a debt, but the least sophisticated debtor could still think that any one or more of the listed entities was owed the debt.

*Gross* v. *Lyons Doughty & Veldhuis, P.C.*, 779 F. App'x 864, 866–67 (3d Cir. 2019) (Citations and quotations omitted).

Here, like the letter in *Gross*, Defendants' letter merely identifies Midland as Schreiber's "Client" whom it "represents." (Defendants' SOF at Ex. A, Ex. 1). Ms. Marti contends she was confused by the Letter because she did not know who she owed the money to. As in *Gross*, it is unclear whether Midland is merely an agent for the original creditor or if it is the current creditor. This confusion is further exacerbated by the body of the letter which states, among other things, that upon request "this firm will provide the name and address of the original creditor if the original creditor is different from the current creditor." (Defendants' SOF at Ex. A, Ex. 1). Accordingly, the letter violates the FDCPA.[2] *Guzman* v. *HOVG, LLC*, 340 F. Supp. 3d 526, 529 (E.D. Pa. 2018) ("A debt collection letter violates Section 1692g if "it can be

---

[2] Ms. Marti agrees with Defendants' assertion that this is a question of law for the Court to consider at this stage. (Defendants' Memorandum of Law, ECF No. 59, at p. 4) (Quoting *Mills vs. Turner*, D. Mass., No. CV 15-13267-MLW (Aug. 25, 2017) 2017 WL 3670967 at *4. *See also Pollard* v. *Law Office of Mandy L. Spaulding*, 766 F.3d 98, at 103 n. 3 (1st Cir. 2014) (noting that the "weight of authority" holds this to be a question of law, and adopting it in that case upon agreement of the parties.)

reasonably read to have two or more different meanings, one of which is inaccurate." Quoting

*Caprio* v. *Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 152 (3d Cir. 2013)).

Defendants also seek to place importance on the (legally required) disclosures that it the

Letter is "FROM A DEBT COLLECTOR" and is "AN ATTEMPT TO COLLECT A DEBT."

(Defendants' SOF at Ex. A, Ex. 1; Defendants' Memorandum of Law, ECF No. 59, at p. 8).

However, this argument was specifically rejected by the Seventh Circuit Court of Appeals as

such language does not lead to a "basic logical deduction" regarding the identity of the creditor,

and that this argument invokes "not logic but guesswork." *Steffek vs. Client Servs., Inc*., 948 F.3d

761, 767 (7th Cir. Jan. 21, 2020).

Furthermore, Defendants' Letter was false, deceptive, or misleading in violation of 15

U.S.C. §§ 1692e and 1692e(10). In *Grady v. Portfolio Recovery Services*, 18-2393, 2019 WL

2226015 at *5 (E.D. Pa. May 23, 2019) the district court analyzed the relationship between §

1692e and § 1692g, stating:

> Section 1692e(10) specifically prohibits a debt collector from "[t]he use of
> any false representation or deceptive means to collect or attempt to collect
> any debt or to obtain information concerning a consumer." 15 U.S.C. §
> 1692e(10). "When allegations under 15 U.S.C. § 1692e(10) are based on the
> same language or theories as allegations under 15 U.S.C. § 1692g, the
> analysis of the § 1692g claim is usually dispositive." Caprio, 709 F.3d at
> 155.
>
> Here, Plaintiff alleges that the Validation Notice violates § 1692e(10) for the
> same reasons and theories she claims the Validation Notice violates § 1692g.
> (Doc. No. 13 at 15.) Plaintiff argues the Validation Notice is deceptive in
> violation of § 1692e(10) because it is capable of multiple interpretations, one
> of which – that a dispute can be made to Defendant verbally – is inaccurate.
> (Id.) Because the Court has already determined that the Validation Notice
> does not, as a matter of law, comply with § 1692g, it follows that the
> Validation Notice also does not, as a matter of law, comply § 1692e(10). For
> this reason, Defendant's Motion for Summary Judgment as to Plaintiff's §
> 1692e claim will be denied.

*Id.* at *7.

Here, by failing to clearly identify the current creditor Defendants' Letter could be misconstrued by the least sophisticated consumer to have more than one meaning, i.e. – to whom the debt is presently owed.  Thus, the Letter sent by Defendants to Ms. Marti and the class members violated both § 1692e and § 1692g.

Finally, based on the foregoing, there should be no doubt that the Letter also violated the Massachusetts Consumer Protection Act, G.L. c. 93A, § 2. Pursuant to 940 C.M.R. § 7.08(1)(b), the Letter was required to provide "the name of the creditor to whom the debt is owed." This language matches exactly the corresponding provision from the FDCPA, § 1692g(a)(2), and the Massachusetts regulations specifically provide that these laws should "be interpreted consistently." 940 C.M.R. § 7.09. Moreover, a violation of the FDCPA in this context " also constitutes a per se Chapter 93A violation." *McDermott* v. *Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 123 (1st Cir. 2014).

Accordingly, Ms. Marti respectfully requests that Defendants' Motion for Summary Judgment be denied.

### B.      Plaintiff Has Standing To Maintain Her Claims

Having established the foregoing well-founded facts and law in support of Ms. Marti's claims on the merits, she now turns to Defendants' arguments with regard to her standing to assert them.

First, Defendants wrongly contend that Ms. Marti must make a separate showing of materiality with regard to her claim under § 1692g(a)(2). In fact, the only circuit court to explicitly consider this issue has forcefully rejected it, stating:

Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion. Section 1692g(a) also does not have an additional materiality requirement, express or implied. Congress instructed debt collectors to disclose this information to consumers, period, so these validation notices violated § 1692g(a).

. . .

In enacting § 1692g(a)(2), Congress determined that a debt collector *must* include in its § 1692g(a) notice "the name of the creditor to whom the debt is owed." With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize. The undisputed facts show such a failure here. Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough. There is also no need for individual inquiry about the materiality to any given recipient. Cf. *Warren v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 374 (4th Cir.2012) (declining to establish a materiality requirement for violations of § 1692e(11), which requires debt collectors to disclose their status as debt collectors, because the "statute expressly prohibits this exact *omission*") (emphasis in original), abrogated on other grounds, *Campbell–Ewald Co. v. Gomez,* ⸺ U.S. ⸺, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016).

*Janetos* v. *Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 and 324-25 (7th Cir. 2016). *See also Warren* v. *Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012) (no materiality requirement involving claims of failures to disclose, as opposed to false representations); *Hart* v. *FCI Lender Servs., Inc.*, 797 F.3d 219, 228 (2d Cir. 2015) (Refusing to excuse violation of § 1692g as *de minimis*.).[3]

However, even if Ms. Marti were required to show materiality as an element of her case, it is easily satisfied. The receipt of a debt collection letter alleging that a consumer owes a debt to

___

[3] Defendants also cite to *Thoby v. Century Fin. Servs., Inc.*, 3:18-CV-01404 (SRU), 2019 WL 1490103 (D. Conn. Apr. 4, 2019) in support of its materiality argument. While *Thoby* does discuss both materiality and cites to *Janetos*, the Court does not explicitly discuss whether a materiality requirement applies in the context of a claim under § 1692g. Rather, the Court holds that the letter at issue satisfies the requirements of § 1692g(a)(2) and separately discusses materiality with regard to other claims. Accordingly, *Thoby* does not appear to distinguish or otherwise clarify its impact with regard § 1692g specifically.

an unspecified creditor squarely meets the materiality requirement.

> This deceptive language is also material because, in myriad respects, it could frustrate the least sophisticated consumer's ability to choose a response to Defendant's complaint. *See Donohue,* 592 F.3d at 1034 (in "applying the materiality requirement ... [to] assess[ ] FDCPA liability, we are [ ] concerned with ... misleading statements that may frustrate a consumer's ability to intelligently choose his or her response."). For example, without the true identity of the original creditor, the least sophisticated consumer is left unable to verify the debt purportedly owed, much less attempt to resolve that debt directly and extrajudicially. *See Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 327 (6th Cir.2012) ("District courts have decided, and we agree, that a[ ] false representation of the creditor's name may constitute a false representation ... under Section 1692e" because failing to accurately identify the creditor may "cause[ ][ ] confusion and delay in trying to contact the proper party concerning payment ... and resolution of the problem.") (internal quotation omitted). So too, the least sophisticated consumer could assume the lone party identified, PRA, to be the original creditor, yet knowing she in fact owes no debt to PRA, choose to ignore the case entirely as an obvious mistake likely to sort itself out. *See Tourgeman,* 2011 WL 3176453, at *6 (S.D.Cal. July 26, 2011) ("the Court can conceive of nary a situation more confusing than receiving a dunning letter identifying an original creditor to whom the consumer never was indebted."); *Suquilanda v. Co hen & Slamowitz, LLP,* 2011 WL 4344044, at *6 (S.D.N.Y. Sept.8, 2011) (where "a collection letter [ ] falsely listed the creditor ... the least sophisticated creditor could be confused as to which entity was the creditor"). Or, again given apparent mistake, the least sophisticated consumer could misapprehend the complexity of and risks posed by the claims alleged, reason that no attorney is necessary, and to her detriment opt to proceed *pro se. See Donohue,* 592 F.3d at 1034 (materiality turns on "the likely effect ... on the minds of unsophisticated debtor ... [and their] ability to make intelligent decisions."). Given such easy to conceive potential frustration to the least sophisticated consumer, the Court finds Defendant's failure to identify the original creditor material under the FDCPA. *Cf. Donohue,* 592 F.3d at 1034 (finding conflation of interest and finance charges immaterial where the Court could conceive of no way in which that conflation could frustrate the least sophisticated consumer's ability to choose a response).

*Heathman v. Portfolio Recovery Associates, LLC*, 12-CV-515 (IEG) (RBB), 2013 WL 3746111 at *4 (S.D. Cal. July 15, 2013). While case law on this issue may be sparse, it is "unanimous" in support of a finding of materiality in this context. *De Amaral v. Goldsmith & Hull*, 12-CV-03580 (WHO), 2014 WL 572268 at *4 (N.D. Cal., Feb. 11, 2014). *See also Caudillo v. Portfolio Recovery Associates, LLC*, 12-CV-200 (IEG) (RBB), 2013 WL 4102155 (S.D. Cal. Aug. 13,

2013); *Thomas v. Portfolio Recovery Associates LLC*, 12-CV1188 (WQH) (WMC), 2013 WL

4517175 (S.D. Cal. Aug. 12, 2013); *Moore v. Express Recovery Serv., Inc.*, 1:16-CV-00126 (TC)

(EJF), 2019 WL 77325 (D. Utah Jan. 2, 2019).

The FDCPA was designed to address precisely the type of risk that flows from the

"'misrepresentation of a consumer's legal rights'". *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d

926, 938 (9th Cir. 2007) (quoting S. Rep. 95-389, at 2 (1977)). Defendants' Letter created a

sufficient risk of harm as contemplated by the FDCPA and constitutes a concrete injury in-fact as

articulated in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Furthermore, confusion constitutes actual harm to a consumer for purposes of

establishing Article III standing. For example, the district court in *Rodriguez v. Codilis & Assoc.*,

17-CV-03656, 2018 WL 1565596, at *3 (N.D. Ill. Mar. 30, 2018) found that where the consumer

in a FDCPA case alleged that she was "confused, irritated and upset as a result" of receiving the

false and conflicting information, a concrete injury was stated for Article III standing. *See also*

*Thompke v. Fabrizio & Brook, P.C.*, 261 F. Supp. 3d 798, 805 (E.D. Mich. 2017) (confusion is

concrete harm); *Smith v. GC Services L.P.*, 1:16-CV-01897 (RLY) (DML), 2017 WL 2629476

(S.D. Ind. June 19, 2017); (plaintiff was harmed by receiving Defendants' allegedly deficient and

misleading communication omitting information required by the FDCPA and therefore presented

a material risk of harm establishing Article III standing); *Prindle v. Carrington Mortg. Serv.,*

*L.L.C.*, 3:13-CV-1349-J-34 (PDB), 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016) (as the object

of allegedly false, deceptive, and/or misleading representations in connection with the collection

of a debt, the consumer alleged she suffered an injury in precisely the form the FDCPA was

intended to guard against and, therefore, need not allege any additional harm beyond the one

Congress has identified); *Pierre v. Midland Credit Mgmt., Inc.*, 16-C-2895, 2019 WL 4059154

(N.D. Ill. Aug. 28, 2019) (finding standing where deceptive collection letter caused

fear, confusion, and emotional distress, even though debtor was not deceived); *Watkins v.*

*Investment Retrievers, Inc.*, 2:17-CV-01348 (KJM) (CKD), 2018 WL 558833 (E.D. Cal. Jan. 24,

2018) (agreeing with debtor that dissemination of false information constitutes a risk of harm

because it confuses the consumer as to FDCPA rights).

      Here, Ms. Marti specifically contends that the Letter caused her to be confused regarding

the identity of her current creditor (ECF No. 25, ¶ 28). She specifically testified that she did not

know who to pay and that she was in fact unable to determine the identity of the creditor.

(Defendants' SOF at Ex. C, p. 26:6-27:11). Not only is this information plainly material, as it

clearly impacts a consumer's ability to intelligently respond, it is also the specific type of harm

that the FDCPA seeks to prevent. Accordingly, this injury is sufficient for standing under both

the FDCPA and G.L. c. 93A. Defendants wrongfully contend that Ms. Marti has not suffered an

injury sufficient to maintain her claim under G.L. c. 93A, but the established case law on this

topic merely requires that a plaintiff suffer "a distinct injury or harm" that arises from the

defendant's conduct. *Tyler* v. *Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013). As explained by

this Court following *Tyler*,

> Chapter 93A, § 9, encompasses primarily economic injuries, as well as those non-economic injuries that cause some harm to the consumer. The types of injuries recognized by chapter 93A are a readily quantifiable loss of money or property, measurable emotional distress, or an invasion of the consumer's personal privacy causing injury or harm worth more than a penny. For injuries falling within the third category, the plaintiff must demonstrate some harm; the mere invasion of an established right is insufficient.

> To prove causation of one of these cognizable injuries, a plaintiff need not show proof of actual reliance on a misrepresentation in order to recover damages; instead, the plaintiff must show a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.

*Ferreira* v. *Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (Citations and quotations omitted). Defendants' contention with regard to economic damages alone is therefore misplaced. In fact, the SJC in *Tyler* specifically acknowledged that, for example, the invasion of a consumer's personal privacy would be a sufficient injury or harm. *Tyler* v. *Michaels Stores, Inc.*, 464 Mass. 492, 504 n. 20 (2013). Certainly, then, a debt collector's failure to provide required information is sufficient harm, particularly where the harm of confusion is specifically what the law sought to prevent by requiring such disclosure.

Finally, Defendants wrongfully contend that a stipulation from Ms. Marti's deposition that she is "not seeking actual damages" but that she is instead "seeking statutory damages only" (Defendants' SOF at Ex. C, p. 55:24-57:7). is tantamount to an admission that she has not suffered any injury. (Memo at 15-17). This is patently incorrect. Ms. Marti contends that the Letter caused her and all class members identifiable harm in the form of confusion. Ms. Marti now seeks only statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B) and $25.00 per class member pursuant to G.L. c. 93A, § 9. This is exactly the type of use envisioned by these statutes. Such statutory damages "merely eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act." *Hershenow* v. *Enter. Rent-A-Car Co. Of Boston, Inc.*, 445 Mass. 790, 799 n. 18 (2006). *See also Ferreira* v. *Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 486 (D. Mass. 2015) ("Statutory damages substitute only for *quantifying* the loss.") (Emphasis in original).

## V.    <u>CONCLUSION.</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion for Summary Judgment be denied.

Respectfully submitted:
Vanessa Marti, Plaintiff,

*/s/ Christopher M. Brine*
Christopher M. Brine (BBO# 679289)
Brine Consumer Law
100 Grove Street, Suite 116
Worcester, MA 01605
Telephone: (508) 556-1899
Facsimile: (508) 556-9951
cmb@brineconsumerlaw.com

*/s/ Donald A. Yarbrough*
Donald A. Yarbrough, Esq. (Admitted Pro Hac
        Vice, October 15, 2018, ECF No. 6)
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235
don@donyarbrough.com


*/s/  O. Randolph Bragg*
O. Randolph Bragg, Esq. (Admitted Pro Hac Vice,
        October 15, 2018, ECF No. 7)
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington Street, Suite 900
Chicago, IL 60602
Telephone: (312) 372-8822
rand@horwitzlaw.com


## CERTIFICATE OF SERVICE

I, Christopher M. Brine, certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Christopher M. Brine*
Christopher M. Brine (BBO 679289)